IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

ECONOMY STONE MIDSTREAM
FUEL, LLC                                                                    PLAINTIFF

V.                                                  CIVIL ACTION NO: 4:08CV127-SA-DAS

M/V A.M. THOMPSON, *her engines,*
*tackle, equipment, appurtenances, etc., in rem*                              DEFENDANT

## AMENDED ORDER

Before the Court are Motion for Interlocutory Sale [doc. 12] and Supplement to Motion for Interlocutory Sale [doc. 66] filed by Economy Stone Midstream Fuel, L.L.C. ("Economy Stone"); Motion to Recognize Preferred Ship Mortgage and Rank Liens [doc. 29] filed by Business First Bank ("Business First"); and Motion for Contribution for Payment of *In Custodia Legis* Expense [doc. 57] filed by Economy Stone.

*Motion for Interlocutory Sale*

The plaintiff seeks interlocutory sale of the M/V A.M. Thompson ("the vessel") under Supplemental Admiralty Rule E(9)(b) on the grounds that the vessel is deteriorating and the expense of keeping her under arrest is excessive. All parties have responded to the motion, and the Court held a telephonic hearing regarding the issues raised by the plaintiff's motion on December 16, 2008. No party opposes interlocutory sale of the vessel. However, Business First asserts that it has a valid preferred ship mortgage and should be allowed to credit bid at the sale up to the amount secured by a mortgage on the vessel, namely $1,261,349.71 in principal, accrued interest, late charges, per diem interest, and reasonable attorney fees. Business First states that its preferred ship mortgage originates from two promissory notes executed by

Defendant Eagle Marine Towing, Inc., the owner of the vessel. It further asserts that any order of sale should include a ranking of all liens asserted herein.

Supplemental Admiralty Rule E(9)(b) provides:

> Interlocutory Sales. If property that has been attached or arrested is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action, or if the expense of keeping the property is excessive or disproportionate, or if there is unreasonable delay in securing the release of property, the court, on application of any party or of the marshal, or the person or organization having the warrant, may order the property or any portion thereof to be sold; and the proceeds, or so much thereof as shall be adequate to satisfy any judgment, may be ordered brought into court to abide the event of the action; or the court may, upon motion of the defendant or claimant, order delivery of the property to the defendant or claimant, upon the giving of security in accordance with these rules.

FED.R.CIV.P. SUPP. R. E(9)(b).

The plaintiff need only demonstrate that one of these conditions is present to justify an interlocutory sale of the vessel. *Silver Star Enterprises, Inc. v., M/V Saramacca,* 19 F.3d 1008, 1014 (5th Cir. 1994). Since attachment of the vessel on September 26, 2008, no bond has been posted, and the vessel has remained in custodial status. The plaintiff has provided proof in the form of the report of Captain Larry E. Strouse, surveyor that because the vessel is being detained, it is susceptible to deterioration and that the expense and risk of keeping the property as such is excessive or disproportionate. Indeed, according to Mr. Strouse's report, the vessel's bottom is thin and contains numerous wastage holes, requiring numerous pumps onboard that run twenty-four hours per day. Additionally, the plaintiff has presented the invoice of the substitute custodian, Superior Boat Works, Inc., showing custodial fees of $150.00 per day not including the costs associated with pumping. Therefore, because the vessel is subject to deterioration and the expense of maintaining it is clearly disproportionate to its value, an interlocutory sale is in the best interests of all parties.

The plaintiff has asked the Court to set a minimum bid at the sale. The plaintiff suggests that the minimum bid should be $2,200,000.00 which, according to the appraisal of Dufour, Laskay & Strouse, Inc., is just under the Orderly Liquidation Value of the vessel. Business First objects to Economy Stone's request for a minimum bid and argues that the requested minimum bid of $2.2 million is inflated. Business First has provided no support for its contention that this price is inflated beyond its conclusory statement.

According to Dufour Laskay, the fair market value of the vessel as of October 29, 2008, was $2,800,000.00. The Court believes that setting the minimum bid at $2 million, is more reasonable and within the best interest of the parties. *See 20th Century Fox Film Corp. V. M. V. Ship Agencies*, 922 F. Supp., 1434, 1438 (M.D. Fla. 1997) (setting the minimum bid at high enough price to protect both plaintiff and defendants' interest in having vessel sold at high enough price to cover all potential claims and expenses). *Cf. Caterpillar Financial Services Corp. v. Coleman*, No. 99-03821 CMRZX, 1999 WL 33218595, at *2-3 (C.D. Cal. Aug. 19, 1999) (basing the minimum bid on the cost to satisfy the plaintiff's lien and all associated costs and expenses); *Dynamic Marine Consortium S.A. v. Latini*, 120 F. Supp. 2d 595, 598 (E.D. La. 1999) (basing the minimum bid on one-half the value submitted in a survey price). Therefore, the minimum bid price shall be $2, 000,000.00, inclusive of any Marshal's fees, publication fees and other costs of sale. If the minimum bid is not achieved, the parties shall report back to the Court within ten (10) days of the date of the attempted sale.

The Court further finds that Ergon Marine and Industrial Supply, Inc.'s request for a longer advertising period of 20 days and advertisement in prominent trade publications is within the best interests of all parties and shall be granted. Accordingly, the parties are authorized to publish notice

of the sale and engage in other appropriate advertising in such specialized publications as the parties mutually agree, with the cost of the additional advertising to be shared equally.

### *Motion to Recognize Preferred Ship Mortgage and Rank Liens In Order of Sale*

Business First seeks an order determining that it has a valid preferred ship mortgage and ranking liens. A preferred mortgage lien has priority over all claims against the vessel except for expenses and fees allowed by the court, costs imposed by the court, and preferred maritime liens. 46 U.S.C. § 31326(b)(1). The Court finds that Business First's request to deem its lien a valid preferred ship mortgage and first in priority is premature, as the time for parties to intervene in this matter has not yet expired and the parties have not yet engaged in any discovery. Pursuant to Local Rule A.1 (I)(6):

> All claims in intervention are to be filed within thirty days after sale of a vessel or property. Claims not timely filed are to be paid out of the proceeds of a sale only after the payment of all timely filed valid claims and costs.

Accordingly, the motion should be denied without prejudice to Business First's right to reassert the motion in a request for summary judgment after the deadline for intervention of potential claimants has passed.

Nevertheless, the Court finds that Business First has made a *prima facie* showing that it has a preferred ship mortgage and that it should be allowed to credit bid at the sale. A mortgagee is statutorily authorized to participate in the sale, and leave of court is not required. 46 U. S.C. § 31329(a)(2); *Key Bank of Puget Sound v. Alaskan Harvester*, 738 F. Supp. 398, 401 (W.D. Wash. 1989). Accordingly, the Court will allow Business First to credit bid the value of its mortgage only on the condition that it agrees to pay any and all claims senior in priority to its preferred ship

mortgage. *See Freret Marine Supply v. M/V Enchanted Capri*, No. Civ.A. 00-3805 2003 WL 22471990, at *1 (E.D. La. Oct. 30, 2003).

### *Motion for Custodia Legis Expenses*

The plaintiff has also moved for contribution for payment of *custodia legis* expenses. On September 26, 2008, the Court appointed Superior Boat Works ("Superior") substitute custodian of the vessel. Superior has submitted an invoice in the amount of $13,706.63, representing services and expenses undertaken by it in maintaining the vessel. Ergon Marine & Industrial Supply, Inc., ("Ergon") is the only party opposing payment of custodial expenses. Ergon asserts that because the vessel has not yet been sold, any and all invoices should be submitted to the U.S. Marshal for payment pursuant to 28 U.S.C. § 1921(a)(2), and the court should not enter an order allocating expenses among the parties until after confirmation of the sale.

Ergon's objection is not well taken. The U.S. Marshal is no longer responsible for custody of the vessel. Additionally, inasmuch as the services provided by Superior will prove beneficial to any and all creditors by maintaining the condition and quality of the vessel, all creditors should be required to pay their per capita share of all reasonable accrued custodial expenses. Accordingly, all intervenors shall be required to pay the *custodia legis* expense in the percentages of their respective claims as set forth in the plaintiff's motion.

**THEREFORE, IT IS ORDERED**:

1. That the plaintiff's motion for interlocutory sale is granted in part in accordance with the above findings. In accordance with this order, the plaintiff shall prepare and submit to the court and the other parties a proposed order for interlocutory sale of the vessel specifying, *inter alia*, the date and terms of the sale, as well as the form and manner of publication of notice.

2. That Business First's motion to recognize preferred ship mortgage and to rank liens is denied as premature. Business First shall be allowed, however, to credit bid at the sale up to the value of its claim only on the condition that it shall be obligated to pay any claims senior in priority to its mortgage. Business First may file a motion for summary judgment seeking recognition of its lien as a valid preferred ship mortgage and for a ranking of liens after the deadline for intervention of all potential claimants has passed.

3. That the plaintiff's motion for contribution of payment of *custodia legis* expenses is granted; and, until further order of the court, the plaintiff shall pay the invoices submitted by Superior, and all intervenors shall tender the *custodia legis* expense in the percentages of their respective claims as set forth in the plaintiff's motion to the plaintiff's attorney within fifteen (15) days from the date an invoice is submitted to counsel for each party.

SO ORDERED this 13th day of January, 2009.

/s/ David A. Sanders
U. S. MAGISTRATE JUDGE