IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**ECONOMY STONE MIDSTREAM**
**FUEL, LLC, et al.**                                                                                                             **PLAINTIFFS**

**V.**                                                                       **CIVIL ACTION NO. 4:08-CV-127-SA-DAS**

**M/V A.M. THOMPSON, et al.**                                                                                   **DEFENDANTS**

## MEMORANDUM OPINION

Before the Court are Economy Stone Midstream Fuel, LLC's Motion for Default Judgment and Judicial Sale [115] and Business First Bank's Motion for Partial Summary Judgment [124]. For the reasons set forth below, Economy Stone Midstream Fuel, LLC's Motion for Default Judgment and Judicial Sale [115] is denied as moot, and Business First Bank's Motion for Partial Summary Judgment [124] is granted.

### I. Background

On September 26, 2008, Economy Stone Midstream Fuel, LLC (Economy Stone) filed its Verified Complaint requesting a writ of seizure against the Defendant A.M. Thompson (the Vessel). Economy Stone alleged that it provided the Vessel with fuel and related necessities under an agreement with its owner, Eagle Marine Towing, Inc. (Eagle Marine).

On October 28, 2008, Business First Bank (Business First) intervened in the action seeking the enforcement of an alleged preferred mortgage in the Vessel.

On October 31, 2008, Ergon Marine & Industrial Supply, Inc. (Ergon) intervened seeking the enforcement of a maritime lien on the Vessel for the provision of necessaries such as fuel oil, lubricants, other engine supplies, and groceries. Ergon also seeks enforcement of personal guaranties executed by James S. Coleman and Alan J. Fein, alleged representatives of Eagle Marine.

On November 21, 2008, Bobbens, Inc., d/b/a Benedetto's Market (Benedetto's) intervened seeking the enforcement of a maritime lien on the Vessel. Benedetto's alleges that from November 2006, through January 2007, it provided the Vessel with certain necessaries, including but not limited to, groceries, cleaning supplies, tobacco, and other consumables. Benedetto's invoiced Contract Marine Services, the alleged owner of the Vessel at that time, for the necessaries. Benedetto's further alleges that from June 2008, through on or about July 11, 2008, it again provided the Vessel with necessaries. It later invoiced Eagle Marine, the owner of the Vessel at that time, for the necessaries provided in 2008.

On the same day that Benedetto's intervened, Business First filed a Motion to Recognize its preferred mortgage as valid and prior to the claims of the other Plaintiffs. Business First also requested that it be allowed to credit bid at the sale of the Vessel up to the amount of its claim.

Finally, on December 2, 2008, L & L Oil and Gas Service, LLC (L & L) intervened seeking enforcement of a maritime lien on the Vessel for the provision of necessaries such as fuel, lubricants, and other services.

On January 12, 2009, the Court entered an Order denying Business First's motion to deem its lien a preferred mortgage and prior to the other claims in this matter. The Court noted that prioritizing the claims would be premature as the time for parties to intervene had not yet expired and the parties had not yet engaged in discovery. However, the Court granted Business First's request that it be allowed to credit bid at the sale of the Vessel up to the amount of its claim, on the condition that it agreed to pay any claims senior in priority to its own.

On February 2, 2009, the Court ordered the interlocutory sale of the Vessel. The Court set a minimum sale price of $2,000,000.00 and authorized Business First to credit bid as much as

$1,267,299.35, the amount of its alleged preferred mortgage, on the condition that Business First pay the costs of sale, *custodia legis* expenses, and lien claims of any creditor adjudged to be senior in priority to the Bank. The judicial sale was held on March 11, 2009, but the sale was unsuccessful.

On April 9, 2009, Economy Stone filed its Motion for Default Judgment and Judicial Sale of the Vessel [115]. Economy Stone requested that the Court order another judicial sale but not set a minimum sale price. On April 14, 2009, the Court ordered the interlocutory sale of the Vessel without a minimum sale price. The Court further allowed Business First to credit bid up to the value of its claim, on the same conditions as before. On May 11, 2009, Business First purchased the Vessel via a credit bid for $260,000.00.

On June 15, 2009, Business First filed its Motion for Partial Summary Judgment requesting that the Court recognize its preferred mortgage and establish its priority over any other lien asserted against the Vessel.

## II. Motion for Default Judgment and Judicial Sale

In its Motion for Default Judgment and Judicial Sale, Economy Stone only requests that the Court order the interlocutory sale of the Vessel without a minimum sale price. A judicial sale of the Vessel was held on May 11, 2009, and the Vessel was sold to Business First on a credit bid of $260,000.00. Therefore, Economy Stone's Motion for Default Judgment and Judicial Sale is denied as moot.

## III. Motion for Partial Summary Judgment

In its Motion for Partial Summary Judgment, Business First argues that 1) it has a valid preferred mortgage, and 2) its preferred mortgage is superior in priority to all other liens asserted against the Vessel.

*A.	Summary Judgment Standard*

Upon consideration of a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ("the burden on the moving party may be discharged by 'showing'... that there is an absence of evidence to support the nonmoving party's case"). The burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Celotex Corp., 477 U.S. at 324, 106 S. Ct. 2548 (citing FED. R. CIV. P. 56(c), (e)). The burden is not discharged by "mere allegations or denials." FED. R. CIV. P. 56(e). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." Agnew v. Wash. Mut. Fin. Group, LLC, 244 F. Supp. 2d 672, 675 (N.D. Miss. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322, 106 S. Ct. 2548; FED. R. CIV. P. 56(c); see also Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The Court is not to weigh the evidence or engage in credibility determinations. Anderson, 477 U.S. at 249, 106 S. Ct. 2505; Deville v. Marcantel, 567 F.3d 156, 163-64 (5th Cir. 2009). "[T]he court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Deville, 567 F.3d at 163-64.

## B.     *Preferred Mortgage*

Benedetto's does not address the issue of whether Business First has a preferred mortgage, and none of the other lienors have responded. Summary judgment on this issue cannot be supported solely on the ground that none of the other parties have responded to Business First's argument that it has a preferred mortgage. John v. Louisiana, 757 F.2d 698, 708 (5th Cir. 1985). However, if the non-moving parties fail to respond to a motion for summary judgment, the inquiry is whether the facts presented by the movant create an appropriate basis to enter summary judgment. Adams v. Travelers Ind. Co., 465 F.3d 156, 164 (5th Cir. 1986). Therefore, the Court will accept as undisputed Business First's allegations relevant to the issue of whether it has a preferred mortgage.

A preferred mortgage is a mortgage that (1) includes the whole of the vessel; (2) is filed in substantial compliance with 46 U.S.C. § 31321; and (3) covers a documented vessel. 46 U.S.C. § 31322(a)(1)-(3).

A mortgage must be filed with the Secretary of Transportation to be valid against parties other than the mortgagor, heirs or devisees of the mortgagor, or any person having actual notice of the mortgage. 46 U.S.C. § 31321(a)(1)(A)-(C). Any mortgage filed in substantial compliance with the requirements is effective against any person from the time it is filed with the Secretary. 46 U.S.C. § 31321(a)(2). To be properly filed, a mortgage must: (1) identify the vessel; (2) state the name and address of each party to the instrument; (3) state the amount of the direct or contingent obligations (in one or more units of account as agreed to by the parties) that is or may become secured by the mortgage, excluding interest, expenses, and fees; (4) state the interest of the mortgagor in the vessel; (5) state the interest mortgaged; and (6) be signed and acknowledged. 46 U.S.C. § 31321(b)(1)-(6).

5

The mortgage document attached to Business First's motion indicates that the mortgage covers the whole of the Vessel and that the Vessel is documented. The mortgage document also fully complies with the filing requirements of 46 U.S.C. § 31321(b)(1)-(6). Therefore, Business First has complied with the requirements of 46 U.S.C. § 31322(a), and it has a preferred mortgage on the Vessel. The Court grants Business First's Motion for Partial Summary Judgment as to this issue.

## C.     *Lien Priority*

"A maritime lien is a special property right in a vessel, giving the lien-holder priority over some claimants." Effjohn Int'l Cruise Holdings, Inc. v. A & L Sales, Inc., 346 F.3d 552, 556 (5th Cir. 2003). Under the United States Commercial Instruments and Maritime Lien Act (CIMLA), any person furnishing repairs, supplies, towage, usage of drydock or marine railway, or other necessaries, to a vessel on the order of the owner or a person authorized by the owner has a maritime lien on that vessel. Id. (citing 46 U.S.C. §§ 31301, 31342). The list of examples of necessaries in the statute is far from exhaustive. Gulf Marine & Indus. Supplies, Inc. v. Golden Prince M/V, 230 F.3d 178, 180 (5th Cir. 2000). A maritime lien for the provision of necessaries attaches to the vessel when the necessaries are ordered and supplied, unless the supplier has notice that the person ordering the necessaries lacks authority to do so. Belcher Co. of Alabama, Inc. v. M/V Maratha Mariner, 724 F.2d 1161, 1163 (5th Cir. 1984).

As previously addressed, Business First has a preferred mortgage. A preferred mortgage has priority over all liens except for *custodia legis* fees and preferred maritime liens. 46 U.S.C. § 31326(b)(1); Effjohn Int'l Cruise Holdings, Inc., 346 F.3d at 556. A preferred maritime lien is a maritime lien on a vessel (1) arising before a preferred mortgage was filed under 46 U.S.C. § 31321;

(2) for damage arising out of maritime tort; (3) for wages of a stevedore when employed directly by a person listed in 46 U.S.C. § 31341; (4) for wages of the crew of the vessel; (5) for general average; or (6) for salvage, including contract salvage. 46 U.S.C. § 31301(5).

The following claims have been made upon the Vessel: (1) Economy Stone's maritime lien for the provision of necessaries on September 10, 2007; (2) Economy Stone's maritime lien for the provision of necessaries on October 10, 2007; (3) Business First's preferred mortgage filed September 7, 2007; (4) Ergon's maritime lien for the provision of necessaries at various times between May 23, 2008, and August 15, 2008; (5) Benedetto's maritime lien for the provision of necessaries between December 2006, and January 2007; (6) Benedetto's maritime lien for the provision of necessaries between June 2008, and July 11, 2008; and (7) L & L's maritime lien for the provision of necessaries between October 31, 2007, and December 5, 2007.

Business First argues that the only lien that arguably could fall within the definition of a preferred maritime lien is the claim made by Benedetto's for the necessaries supplied to the Vessel between December 2006, and January 2007. However, Business First contends that Benedetto's does not have a valid maritime lien as Contract Marine Services, the party procuring the necessaries, was neither the owner of the Vessel nor authorized to procure necessaries at that time. Business First further contends that any claim by Benedetto's based on the necessaries procured by Contract Marine Services is barred by the doctrine of laches.

In response, Benedetto's asserts that its maritime lien for the provision of necessaries between December 2006, and January 2007, is a preferred maritime lien, superior in priority to a preferred mortgage. Benedetto's argues that Business First has not proven that Contract Marine Services and/or its agent were *not* one of the types of person other than the record owner whose

7

procurement of necessaries may create a maritime lien. Benedetto's further argues that necessaries were later procured by Eagle Marine that may have been paid for by deductions from Eagle Marine's employees' wages, thereby giving Benedetto's a preferred maritime lien.[1] Finally, Benedetto's contends that the doctrine of laches does not bar its claim.

*1. Authority to Procure Necessaries*

The first issue for the Court, therefore, is whether "the person who placed the order[s]" between December 2006, and January 2007, "had authority to do so, either real, apparent, or statutorily presumed." Lake Charles Stevedores, Inc. v. Professor Vladimir Popov MV, 199 F.3d 220, 225 (5th Cir. 1999) (citing Belcher Co. of Alabama, Inc., 724 F.2d at 1161). "Authorization, actual or fairly presumed, given prior to or during rendition of services, or ratified subsequent to rendition will suffice." Atlantic & Gulf Stevedores, Inc. v. M/V Grand Loyalty, 608 F.2d 197, 202 (5th Cir. 1979). Under Section 31341(a) of CIMLA, the following persons are presumed to have authority to procure necessaries on behalf of a vessel: (1) the owner; (2) the master; (3) a person entrusted with the management of the vessel at the port of supply; or (4) an officer or agent appointed by the owner, a charterer, an owner pro hac vice, or an agreed buyer in possession of the vessel. 46 U.S.C. § 31341(a); see also Lake Charles Stevedores, Inc. 199 F.3d at 224.

---

[1]The Court notes that Economy Stone, L & L, and Ergon did not respond to Business First's Motion for Partial Summary Judgment. Benedetto's, however, responded and referenced this crew wages argument, originally made in its response to Business First's earlier Motion to Recognize Preferred Ship Mortgage and Rank Liens. The Court will not consider the arguments raised by Economy Stone, L & L, and Ergon in response to Business First's Motion to Recognize Preferred Ship Mortgage and Rank Liens, as they have not reasserted those arguments in response to the current motion. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Adams, 465 F.3d at 164. In any case, Benedetto's is the only party to express opposition to Business First's Motion for Partial Summary Judgment.

Benedetto's asserted in its Complaint that it provided the Vessel with necessaries from November 2006, through January 2007, while the Vessel was owned by Contract Marine Services. Derek Benedetto, the owner of Benedetto's, testified by way of affidavit that a man named David Reidt with Contract Marine Services contacted him in late October or early November 2006, and requested that Benedetto's supply the Vessel with necessaries. Reidt claimed that the Vessel was owned by Contract Marine Services.

However, the abstract of title attached to Business First's motion shows that Contract Marine Services did not acquire the Vessel until June 18, 2007, after the necessaries were provided. At the time the alleged lien arose, American Boat Services, LLC (American Boat Services) owned the Vessel. Benedetto's does not dispute the accuracy of this information or offer any evidence to contradict it. Benedetto's merely argues that Business First has not proven that Reidt and Contract Marine Services were *not* among the types of persons other than a record owner who may create a maritime lien for the provision of necessaries. Benedetto's argues that either Reidt or Contract Marine Services must have been authorized to acquire necessaries because (1) Reidt would not have contacted Benedetto's to procure the necessaries otherwise, and (2) Reidt possessed a mortgage interest in the Vessel after Eagle Marine had acquired it, as evidenced by the abstract of title.

The United States Supreme Court has stated that a party asserting a maritime lien for the provision of necessaries bears the "burden of proving that the supplies in question were furnished to [the vessel] by [the claimant] upon order of the owner or of some one acting by his authority." Piedmont & Georges Creek Coal Co. v. Seaboard Fisheries Co., 254 U.S. 1, 12, 41 S. Ct. 1, 65 L. Ed. 97 (1920). Because a maritime lien "may operate to the prejudice of prior mortgagees or of purchasers without notice[,] [i]t is therefore *stricti juris* and will not be extended by construction,

9

analogy or inference." Id.; see also Rascal Survey U.S.A., Inc. v. M/V Count Fleet, 231 F.3d 183, 192 (5th Cir. 2000). In other words, a claimant on a vessel does not receive the benefit of a presumption that the person procuring the necessaries had the authority to do so, unless the procurer falls within one of the categories listed in 46 U.S.C. § 31341(a). See Lake Charles Stevedores, Inc., 199 F.3d at 224, n. 5 (while the 1971 amendments to CIMLA may have removed from suppliers the obligation to investigate whether the entity ordering necessaries had authority to bind the vessel, they did not alter the definition or requirement of authority) (citing Jan C. Uiterwyk Co. v. MV Mare Arabico, 459 F. Supp 1325, 1329 (D. Md. 1978)).

Benedetto's, therefore, has incorrectly stated the burden of proof as to this issue. Business First is not required to prove that Reidt *did not* have authority to procure necessaries for the Vessel. Rather, Benedetto's is required to prove that he *did*. Benedetto's offers no proof that Reidt had actual authority. Further, Benedetto's offers no argument or proof as to the existence of an agency relationship between Reidt and a person authorized to procure necessaries on behalf of the Vessel. Benedetto's argument is, essentially, that Reidt had apparent authority to procure necessaries on behalf of the Vessel because he would not have done so otherwise.

A similar argument was made in Lake Charles Stevedores, Inc. v. Professor Vladimir Popov MV, 199 F.3d 220 (5th Cir. 1999). There, a stevedore company argued that a party procuring stevedoring services on behalf of a vessel had actual and apparent authority to do so because of the nature of the services provided and because the authority to provide said services could have come from no one but the vessel's owners. Lake Charles Stevedores, Inc., 199 F.3d at 226. The Fifth Circuit Court of Appeals addressed the argument in terms of (1) whether the party procuring the services qualified as one of the entities listed in 46 U.S.C. § 31341(a) who are presumed to have

authority to procure necessaries, and (2) whether the actions of the ship's master ratified the procurement of services.  Id. at 226-33.

The Court first noted that the party procuring the services was not the owner of the vessel, its master, or a person entrusted with the management of the vessel at port.  Id. at 226.  The Court then considered whether the procurer was an agent of a person with authority, employing general principles of agency law and considering the roles of the parties in the transactions.  Id. at 226-27.  The Court noted that the contract between the procurer and the sub-charterer neither gave express authority to the procurer to employ stevedores on behalf of the vessel nor created a general agency relationship between them.  Id. at 227.

The evidence presented by Benedetto's establishes only that Reidt procured necessaries for the Vessel - not the he had the authority to do so.  Benedetto's has presented evidence that Reidt contacted it, claiming to be an agent of Contract Marine Services, which he represented owned the Vessel.  It is undisputed that Contract Marine Services did not own the Vessel.  Benedetto's has not provided evidence of an agency relationship between Contract Marine Services/Reidt and American Boat Company, the actual owner of the Vessel at the time the necessaries were procured.  Further, Benedetto's has not argued or provided evidence that American Boat Company ratified the procurement.

The existence of a financing relationship between Reidt and Eagle Marine is of no consequence to this issue, as that relationship did not come into existence until August 2007.  The necessaries were procured from November 2006, through January 2007, and there is no evidence that Eagle Marine had any relationship to the Vessel at that point in time.  Even if that were not the case, mortgagees are not listed among the parties who are presumed to have authority to procure

necessaries on behalf of the vessel. 46 U.S.C. § 31341(a).

Benedetto's has offered no evidence that the person procuring necessaries had the authority to do so or fell within one of the categories of persons presumed to have authority. Therefore, Business First's preferred mortgage is superior in priority to Benedetto's alleged maritime lien for the provision of necessaries between November 2006, and January 2007. Having so found, it is unnecessary for the Court to address Business First's laches argument.

### 2. *Maritime Lien for Wages*

In response to Business First's Motion for Partial Summary Judgment, Benedetto's referenced an argument asserted in its response to Business First's earlier Motion to Recognize Preferred Ship Mortgage and Rank Liens. Benedetto's argued that its provision of necessaries to the Vessel created a maritime lien for wages, as Eagle Marine allegedly deducted funds from the crew's wages to pay for the necessaries provided by Benedetto's between June, 2008, and July 11, 2008.

Business First has a preferred mortgage. A preferred mortgage has priority over all liens except for *custodia legis* fees and preferred maritime liens. 46 U.S.C. § 31326(b)(1); Effjohn Int'l Cruise Holdings, Inc., 346 F.3d at 556. A preferred maritime lien is a maritime lien on a vessel (1) arising before a preferred mortgage was filed under 46 U.S.C. § 31321; (2) for damage arising out of maritime tort; (3) for wages of a stevedore when employed directly by a person listed in 46 U.S.C. § 31341; (4) for wages of the crew of the vessel; (5) for general average; or (6) for salvage, including contract salvage. 46 U.S.C. § 31301(5). Further, "[o]ne who advances money to pay crew wages is entitled to a maritime lien of the same rank." Gen. Elec. Credit & Leasing Corp. v. Drill Ship Mission Exploration, 668 F.2d 811, 813-14 (5th Cir. 1982). Therefore, the issue before the

Court is whether a lien on a vessel for the provision of necessaries becomes a lien for crew wages if the vessel's owner makes deductions from the crew's wages to offset the cost of the necessaries.

As noted above, maritime liens are "*stricti juris* and will not be extended by construction, analogy or inference." Piedmont & Georges Creek Coal Co., 254 U.S. at 12, 41 S. Ct. 1; Rascal Survey U.S.A., Inc., 231 F.3d at 192. Therefore, the plain language of the statute and its interpreting case law counsel against Benedetto's argument. Benedetto's is not seeking payment for unpaid wages of the crew of the vessel, and it does not claim to have advanced money to pay crew wages. Rather, it is seeking payment for the provision of necessaries. While the Fifth Circuit Court of Appeals has held that one who advances money to pay crew wages is entitled to a preferred maritime lien, Benedetto's cites to no case in which the Fifth Circuit Court of Appeals has extended this reasoning to provide preferred maritime liens in cases where a vessel acquired goods for its crew and then deducted the cost of the goods from the crew's wages. The case cited by Benedetto's involved a food services company taking over the food preparation and cleaning services on the ship - functions traditionally performed by members of the ship's crew. Gen. Elec. Credit & Leasing Corp., 668 F.2d at 813. The Court held that the service provider's employees became "crew members" for purposes of determining lien priority, and that the service provider was entitled to the amount of wages typically paid to the ship's crew for such services. Id. at 814. The case *sub judice* presents a much different issue, in that there is no evidence that Benedetto's performed a task typically performed by the ship's crew.

Benedetto's argument also runs contrary to the common law purpose of a seaman's lien for wages. At common law, seamen possessed a maritime lien against a vessel to secure their wages. Governor & Co. of the Bank of Scot. v. Sabay, 211 F.3d 261, 268 (5th Cir. 2000) (citing Leon v.

13

Galceran, 78 U.S. (11 Wall.) 185, 187, 20 L. Ed. 74 (1870); Sheppard v. Taylor, 30 U.S. (5 Pet.) 675, 709-10, 8 L. Ed. 269 (1831)). That common law principle has been codified in CIMLA (and its predecessor, the Ship Mortgage Act), which provides that seaman's wages are preferred maritime liens, superior in priority to preferred mortgages. Sabay, 211 F.3d at 268 (citing 46 U.S.C. § 31326(b)(1)); First Nat'l Bank v. M/V Lightning Power, 776 F.2d 1258, 1262 (5th Cir. 1985); Brandon v. S.S. Denton, 302 F.2d 404, 415 (5th Cir. 1962); Crabtree v. The SS Julia, 290 F.2d 478, 482 (5th Cir. 1961); Scrofani v. Miami Rare Bird Farm, Inc., 208 F.2d 461, 464 (5th Cir. 1953)); see also 46 U.S.C. § 31301(5).

The Fifth Circuit Court of Appeals has noted the historic importance of seaman's liens for wages, describing them as "sacred" liens. Sabay, 211 F.3d at 266-68. The Court cited the following rationale behind granting seamen's wages such a revered status:

> Seamen are not a class of men who ordinarily make provision against the future. On their return from a voyage they are usually dependent on their wages for present support, and if they are withheld they ordinarily find themselves in a state of entire destitution, not only without present means to provide for their immediate and most pressing necessities, but without credit.

Id. at 268 (quoting The David Pratt, 1 Ware 509, 7 F. Cas. 22, 25 (D. Me. 1839)).

In addition to falling outside the plain language of the statute and interpreting case law, Benedetto's claim does not fit within the historic purpose of seamen's liens for wages. Benedetto's claim does not implicate the needs of the Vessel's crew, in that Benedetto's does not seek the payment of wages owed to the crew. Rather, Benedetto's seeks payment of a debt incurred upon the provision of necessaries, a transaction falling squarely outside the historic context of a seaman's lien for wages. Further, Benedetto's has not advanced money for the payment of crew wages or provided a service on the Vessel that is typically performed by crew members. Benedetto's claim

on the Vessel for necessaries provided between June, 2008, and July 11, 2008, does not, therefore, qualify as a preferred maritime lien for crew wages.

   3. *Ranking of Business First's Preferred Mortgage*

The only party in the present action to assert that its lien falls within the definition of a preferred maritime lien is Benedetto's. As explained above, neither of Benedetto's asserted liens falls within the definition of a preferred maritime lien. The remaining liens asserted are for the provision of necessaries, and none of them arose before Business First's preferred mortgage was filed. Therefore, Business First's preferred mortgage has priority over the other claims made on the Vessel, and Business First's Motion for Partial Summary Judgment is granted as to this issue.

## IV. CONCLUSION

For the reasons stated above, Economy Stone's Motion for Default Judgment and Judicial Sale [115] is **DENIED AS MOOT**, and Business First's Motion for Partial Summary Judgment [124] is **GRANTED**.

A separate order consistent with this opinion shall be entered on this the 27th day of August, 2009.

/s/ Sharion Aycock  
**UNITED STATES DISTRICT JUDGE**