IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

ECONOMY STONE MIDSTREAM
FUEL, LLC, et al.                                                                    PLAINTIFFS

V.                                                         CIVIL ACTION NO. 4:08-CV-127-SA-DAS

M/V A.M. THOMPSON, et al.                                                        DEFENDANTS

**MEMORANDUM OPINION**

Currently before the Court are Ergon Marine & Industrial Supply, Inc.'s Motion for Default Judgment as to Defendant James Coleman [110] and Defendant Coleman's Motion to Contest Ergon's Request for a Default Judgment and to Request Dismissal of Coleman from this action [132]. For the reasons stated below, the Court denies Defendant Coleman's motion and grants a default judgment against Coleman in favor of Ergon.

**I. Background**

Ergon filed its Intervenor Complaint on October 31, 2008. Defendant Coleman was personally served with process on December 6, 2008. Upon Ergon's motion, the clerk entered a default against Coleman on January 8, 2009. Coleman filed a Motion to Dismiss on January 20, 2009, alleging that he was never served with process. However, he failed to offer any evidence to rebut the sworn statement of the process server, and, therefore, the Court denied his motion.

On March 18, 2009, Ergon filed its Motion for Default Judgment. On August 7, 2009, Coleman filed a Motion to Contest the Plaintiff's Request for a Default Judgment and Request to Dismiss him from this action. Ergon responded to the motion as if it were either a response to its Motion for Default Judgment or a Motion for Summary Judgment.

The Court subsequently ordered the parties to brief Coleman's motion as if it were a motion

to set aside the clerk's entry of default. See United States v. One Parcel of Real Property, 763 F.2d 181, 183 (5th Cir. 1985) (appellate court agreed with trial court's construal of "motion for leave to file a sworn claim" as a motion to set aside an entry of default); Brown v. Drug & Alcohol Program, 2009 U.S. Dist. LEXIS 64763, *1 n. 1 (S.D. Miss. July 8, 2009) (district court construed a motion to dismiss as a motion to set aside an entry of default). The parties have submitted their briefs, and the motion is ripe for decision.

## II. Motion to Set Aside Entry of Default

"Defaults are not favored and their strict enforcement 'has no place in the Federal rules.'" Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc., 346 F.3d 552, 563 (5th Cir. 2003) (quoting Amberg v. FDIC, 934 F.2d 681, 686 (5th Cir. 1991)). Therefore, "[t]he court may set aside an entry of default for good cause." FED. R. CIV. P. 55(c). The requirement of "good cause" is generally interpreted liberally. Effjohn Int'l Cruise Holdings, Inc., 346 F.3d at 563. In determining whether good cause exists, "the court should consider (1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; and (3) whether a meritorious defense is presented." Buckley v. Donohue Indus., 100 Fed. Appx. 275, 278 (5th Cir. 2004) (citing CJC Holdings, Inc. v. Wright & Lato, Inc., 979 F.2d 60, 64 (5th Cir. 1992)). "These factors are not exclusive; instead, they are to be regarded simply as a means to identify good cause." Effjohn Int'l Cruise Holdings, Inc., 346 F.3d at 563. The Court may consider other factors, including whether the defaulted party has acted expeditiously to correct the default. Id.

The "willfulness" inquiry focuses on the neglect or culpable conduct of the defaulted party. CJC Holdings, Inc., 979 F.2d at 64. "A willful default is an 'intentional failure' to respond to litigation." Beitel v. OCA, Inc., 551 F.3d 359, 370 n. 32 (5th Cir. 2008) (quoting Lacy v. Sitel

2

Corp., 227 F.3d 290, 292 (5th Cir. 2000)). "Willful failure alone may constitute sufficient cause for the court to deny" a motion to set aside an entry of default. In re Dierschke, 975 F.2d 181, 184-85 (5th Cir. 1992); see also Jenkens & Gilchrist v. Groia & Co., 542 F.3d 114, 122 (5th Cir. 2008).

In the present case, Coleman was served with process on December 6, 2008. The summons expressly stated that he was required to answer the Complaint within twenty days after service of process. The record shows that Coleman contacted Ergon's counsel to discuss the case as early as the week of December 15, 2008 - before Coleman's answer was due.[1] Further, Ergon's counsel expressly reminded Coleman of his obligation to answer the Complaint on December 19, 2008, by way of e-mail correspondence. Finally, an attorney from New York contacted Ergon's counsel on behalf of Coleman on December 26, 2008, asking whether Ergon would agree to an extension of time for Coleman to answer the Complaint. Ergon responded that it would consider agreeing to an extension if Coleman entered an appearance within a few days. Coleman did not appear in this matter until January 20, 2009, when he filed his Motion to Dismiss - after the clerk had correctly entered a default.

As of the date of this opinion, Coleman has neither answered the Complaint nor sought leave of the Court to do so out of time. The only explanation Coleman offers is his belief that he was not properly served with process. In fact, Coleman filed a Motion to Dismiss on January 20, 2009, alleging that he was never properly served with process. The Court denied Coleman's motion to dismiss on April 9, 2009, finding that Coleman had failed to present any evidence to rebut the sworn statement of the process server. Despite the fact that the Court ruled on the issue of service of process over seven months ago, Coleman has still not filed an answer or sought leave of the Court

---

[1] See Fed. R. Civ. P. 12(a)(1)(A)(I), 6(a).

to do so. See Dierschke, 975 F.2d at 184-85 (where defendant "chose to make a decision that he hadn't been served when, in fact, he had" the district court's finding of a willful failure to answer was not an abuse of discretion).

Coleman has been on notice of his responsibility to answer the allegations of Ergon's Complaint since December 6, 2008. Further, Coleman corresponded with Ergon's counsel following service of process, and Ergon reminded Coleman of his obligation to file a responsive pleading. Finally, at one point in these proceedings, Coleman was apparently represented by an attorney who attempted to negotiate an extension of time for Coleman to file an answer. All of the above shows that Coleman has been aware of his obligation to answer the complaint since well before an answer was due. Despite Coleman's knowledge of his obligation to answer the Complaint, he has not filed an answer, offered any legitimate explanation for his failure to do so, or acted expeditiously to correct his default. Effjohn Int'l Cruise Holdings, Inc., 346 F.3d at 563. Therefore, the Court construes Coleman's failure to answer as a willful failure.[2]

"A finding of willful default ends the inquiry, for 'when the court finds an intentional failure of responsive pleadings there need be no other finding.'" Lacy, 227 F.3d at 292 (quoting Dierschke, 975 F.2d at 184). Therefore, because the Court finds that Coleman's failure to file a responsive pleading was willful, his motion requesting that the Court set aside the clerk's entry of default is

---

[2] See Beitel, 551 F.3d at 372-73 (where defendant is aware of litigation, has been properly served, and plaintiff has not represented to defendant that a default would not be sought against him, a finding of willfulness is likely to withstand deferential review); DirecTV, Inc. v. Young, 195 Fed. Appx. 212, 214-15 (5th Cir. 2006) (where defendant offered no explanation for failure to answer, despite the fact that he had been specifically apprised of his obligation to answer and that plaintiff would seek a default judgment if no answer was filed, district court did not err in its finding of willfulness).

denied.³

## II. Motion for Default Judgment

Default judgments are generally disfavored. Lacy, 227 F.3d at 292. Federal courts universally favor a trial on the merits of a case. Dierschke, 975 F.2d at 183. However, the Federal Rules of Civil Procedure contain a two-part procedure for the Court to follow when considering the entry of a default judgment. First, upon a proper showing that a party has failed to plead or otherwise defend a case brought against him, the clerk of the court is required to enter a default. FED. R. CIV. P. 55(a). The default functions as an admission of the Plaintiff's well-pleaded allegations of fact. Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).

After a default is entered, "[i]f the plaintiff's claim is for a sum certain, or a sum that can be made certain by computation, the clerk - on the plaintiff's request, with an affidavit showing the amount due - must enter judgment for that amount and costs against" the defaulted defendant. FED. R. CIV. P. 55(b)(1). However, "[i]n all other cases, the party must apply to the court for a default judgment." FED. R. CIV. P. 55(b)(2). "The court may conduct hearings or make referrals" if it deems further investigation necessary. Id. Once the procedural requirements for a default judgment have been met, the Court evaluates the plaintiff's Complaint to confirm that "there [is] a sufficient

---

³The Court also notes that Coleman has failed to present a meritorious defense in compliance with the third factor of the "good cause" analysis. Coleman alleges that he terminated his obligations under the personal guaranty agreement by faxing a letter to Ergon. He further alleges that he discussed the termination of his obligations with Ergon representatives. Ergon disputes Coleman's allegations, but it is not necessary for the Court to resolve this factual dispute. According to the terms of the personal guaranty agreement, Coleman was required to terminate his obligations by "certified mail notice." Therefore, even assuming that Coleman's allegations are true, his notification would have been ineffective, in that it did not comply with the terms of the personal guaranty agreement.

basis in the pleadings for the judgment." Nishimatsu Const. Co., Ltd., 515 F.2d at 1206.

Ergon served Coleman with process and provided him with notice of its intent to pursue a default judgment. In response, Coleman filed a motion which this Court construed as a motion to set aside the clerk's entry of default. The Court has denied Coleman's motion. Therefore, if Ergon's Complaint provides a sufficient basis for the relief it seeks against Coleman, the Court must enter a default judgment.

In its Complaint, Ergon alleged that authorized representatives from Eagle Marine ordered necessaries from Ergon, and that Coleman signed a Personal Guaranty Agreement in which he guaranteed Eagle Marine's debt. In support of its claims, Ergon attached copies of invoices sent to Eagle Marine, dated May 23, 2008, through August 15, 2008. Ergon also provided a copy of the personal guaranty agreement entered by Coleman. The allegations and documents within Ergon's Complaint are sufficient to support entry of default judgment against Coleman, and the Court grants Ergon's Motion for Default Judgment with respect to Coleman.

In its Supplement to the Motion for Default Judgment, Ergon requests an award of $649,101.10. The amount includes: $515,146.92 of unpaid invoices for the provision of necessaries; $39,782.97 of interest accrued through July 17, 2009, at the rate of 8% per annum; and $94,171.21 in attorney's fees, legal expenses, and court costs incurred by Ergon through June 30, 2009.

Based on the well-pled allegations of the Complaint and the documents attached thereto, the Court finds that Defendant Coleman is jointly and severally liable with Defendants Eagle Marine and Fein[4] for the $515,146.92 of primary debt underlying this action.

---

[4]See Econ. Stone Midstream Fule, LLC v. M/V A.M. Thompson, 2009 U.S. Dist. LEXIS 98818 (N.D. Miss. Oct. 13, 2009).

Ergon also seeks pre-judgment interest at the rate of 8% percent per annum. "[I]n maritime cases the award of prejudgment interest is the rule, rather than the exception, and the trial court has discretion to deny prejudgment interest only where peculiar circumstances would make such an award inequitable." Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp., 71 F.3d 198, 204 (5th Cir. 1995). Prejudgment interest is typically awarded from the date of loss. Reeled Tubing, Inc. v. M/V Chad G, 794 F.2d 1026, 1028 (5th Cir. 1986). The rate of pre-judgment interest is within this Court's broad discretion. Id. at 1029. Ergon has requested pre-judgment interest at a rate of 8% per annum. This Court has previously allowed a prejudgment interest rate of 8% per annum and believes it to be an equitable rate in this case. Arkansas Valley Dredging Co. v. Magnolia Marine Transp. Co., 469 F. Supp. 179, 187 (N.D. Miss. 1979).

As demonstrated in Exhibit 2 to Ergon's Motion for Default Judgment [110-3], if calculated at a rate of 8% per annum, $5,345.75 in interest accrued on the subject debt through August 15, 2008, the date Eagle Marine placed its final order. Since that date, $112.91 of interest has accrued daily.[5] Therefore, the Court holds that Defendant Coleman is jointly and severally liable with Defendants Eagle Marine and Fein for the $47,760.93 in pre-judgment interest that accrued through the October 13, 2009 - the date of the Court's Order and Memorandum Opinion addressing Ergon's Motion for Default Judgment as to Eagle Marine and Fein.[6] Coleman is also solely liable for an additional $5,758.41 in pre-judgment interest that has accrued since October 13, 2009.[7]

Ergon also requests attorney's fees, expenses, and costs totaling $94,171.21 through June

---

[5] ($515,146.92)(0.08) / (365) = $112.91

[6] ($112.91)(423 days) = $47,760.93

[7] ($112.91)(51 days) = $5,758.41

7

30, 2009. Ergon's contract with Coleman contains a provision that Coleman, as guarantor, must reimburse Ergon for all expenses incurred in the enforcement of the contract, including legal expenses, court costs, and reasonable attorneys' fees. Therefore, an award of attorneys' fees, expenses, and costs is appropriate. The documents submitted by Ergon are sufficient to establish the reasonableness of its fees, costs, and expenses. Fidelity & Deposit Co. of Maryland v. Williams, 2006 U.S. Dist. LEXIS 67038, *4 (N.D. Miss. Sept. 15, 2006). Therefore, the Court holds that Coleman is jointly and severally liable with Defendant Fein for $94,171.21 of attorneys' fees and costs.

Finally, Ergon requests post-judgment interest in the amount of 8% per annum, but the amount of post-judgment interest to be awarded on any money judgment recovered in a civil case before this Court is set by statute. See 28 U.S.C. § 1961. Therefore, the Court awards Ergon post-judgment interest in the amount of 0.27% per annum as to the $5,758.41 judgment against Defendant Coleman alone. However, post-judgment interest as to portion of the judgment for which Defendant Coleman is jointly and severally liable with other defendants shall be calculated at the rate 0.38% per annum, the rate applicable on October 13, 2009, when the Court entered judgment against Defendants Fein and Eagle Marine.

### III. Conclusion

For the reasons stated above, the Court denies Defendant Coleman's Motion to Set Aside the clerk's entry of default and grants Ergon's Motion for Default Judgment as to Defendant Coleman.

For purposes of clarification, the Court notes that it granted Ergon's Motion for Default Judgment as to Defendants Eagle Marine and Fein in an Order and Memorandum Opinion issued

8

on October 13, 2009. In that Order, the Court held that Eagle Marine and Fein were jointly and severally liable for $515,146.92 for the primary debt; $47,760.93 of pre-judgment interest; and post-judgment interest to be calculated at the rate of 0.38% per annum. In its Order of October 28, 2009, the Court clarified that Fein was liable for an additional $94,171.21 in expenses, costs, and attorneys' fees.[8]

The Court now holds that Defendant Coleman is jointly and severally liable with Defendants Eagle Marine and Fein for $515,146.92 for the primary debt underlying this action, and $47,760.93 of pre-judgment interest. Further, Defendant Coleman is jointly and severally liable with Defendant Fein for $94,171.21 in expenses, costs, and attorneys' fees. Finally, Defendant Coleman is solely liable for an additional $5,758.41 in pre-judgment interest. Post-judgment interest as to the damages for which Defendant Coleman is jointly and severally liable with other Defendants shall be calculated at the rate of 0.38% per annum, the applicable rate on the date which the Court first entered judgment on those awards. However, post-judgment interest on the damages for which Defendant Coleman is solely liable - the additional $5,758.41 in pre-judgment interest - shall be calculated at the rate of 0.27% per annum.[9]

So ordered on this the 3rd day of December, 2009.

/s/ Sharion Aycock
**UNITED STATES DISTRICT JUDGE**

---

[8] Since the Court held that Fein would be liable for attorneys' fees and costs on October 13, 2009, the post-judgment interest rate applicable on that date - 0.38% per annum - shall apply to the judgment for attorneys' fees and costs. See La. Power & Light Co. v. Kellstrom, 50 F.3d 319, 331-32 (5th Cir. 1995) (post-judgment interest shall accrue from the date of the original judgment in cases where the fees are initially awarded and then quantified at a later date).

[9] See Boston Old Colony Ins. Co. v. Tiner Assocs., 288 F.3d 222, 234 (5th Cir. 2002) (post-judgment interest is assessed against the pre-judgment interest).